UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NORTHERN NATURAL GAS CO.,

Plaintiff,

Civil No. 23-1906 (JRT/DLM)

v.

EASMENT AND RIGHT-OF-WAY ACROSS 33.523 ACRES MORE OR LESS, LOCATED IN LOT 1, BLOCK 1 STEEPLE VIEW 2D ADDITION, SCOTT COUNTY, MINNESOTA, et al.,

Defendants.

MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT AND STAYING ACTION

Devin Driscoll, Howard A. Roston, and Patrick D. J. Mahlberg, **FREDRIKSON & BYRON**, 60 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Plaintiff.

Christopher A. Jensen, **THE JENSEN LITIGATION FIRM, PLLC**, 1221 Fourth Avenue East, Suite 195, Shakopee, MN 55379, for Defendant Lan Le.

Corey J. Eilers, **EILERS LAW, PLLC**, 8635 Harrison Circle, Bloomington, MN 55437, for Defendant Barney Financial, LLC.

Pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h), Northern Natural Gas Company ("Northern") may exercise eminent domain to acquire necessary rights-of-way for its facilities when unable to reach voluntary agreements with landowners. This case presents an unusual application of that statutory right. Northern already has the easement it wants, having negotiated with the landowner and built facilities on a property

near Elko New Market. But it neglected to negotiate for subrogation rights with the property's mortgagee, Barney Financial, LLC ("Barney").

The property is now in foreclosure proceedings, and the parties agree that Barney's senior mortgage has priority over Northern's easement. Because subrogation negotiations with Barney have not succeeded, Northern seeks to exercise a statutory right of eminent domain over Barney's mortgage. But Barney will not take possession for at least a year, if ever. The Court will deny Northern's motion for immediate use and possession and stay this action because it is not ripe for review. Northern's potential future injury—extinguishment of its easement following foreclosure proceedings—is too speculative right now for judicial intervention to be appropriate.

## BACKGROUND

### I. FACTS

Northern operates an extensive network of natural gas pipelines. (Decl. Bryan P. Kruger Supp. Pl.'s Mot. ("Kruger Decl.") ¶ 5, Nov. 10, 2023, Docket No. 38.) It owns a certificate of public convenience and necessity, issued by the Federal Energy Regulatory Commission, authorizing it to transport natural gas. (*Id.* ¶ 6.); *see also* 15 U.S.C. § 717f(c); 20 FERC ¶ 62,410, 1982 WL 40871 (Sept. 1, 1982). Amongst other benefits, the certificate authorizes Northern to acquire necessary rights-of-way for natural gas transportation, including through eminent domain if necessary. 15 U.S.C. § 717f(h); (Kruger Decl. ¶ 7.)

In 2021, Northern paid $150,000 to the owner of the Defendant property ("the property"), Aaron Le, for an easement to construct two town border stations on the

property. (Aff. James J. Blanchard, Jr. Opp'n Pl.'s Mot. ("Blanchard Aff.") ¶¶ 5–7, Dec. 1, 2023, Docket No. 45; Kruger Decl. ¶ 8.) Town border stations reduce the pressure of natural gas before it is delivered to a purchase point. (Kruger Decl. ¶ 9.) The stations were constructed and have been in operation since 2021. (*Id.* ¶ 13.) They now service approximately 5,000 downstream customers in Elko New Market. (*Id.* ¶ 19.)

In 2016, Le took out a mortgage, now owned by Barney, on the property. (Blanchard Aff. ¶¶ 5, 14.) In an apparent oversight, Northern did not negotiate for subrogation of Barney's mortgage or engage with Barney's predecessor during the 2021 negotiations. (*Id.* ¶¶ 6–9.) Barney later commenced foreclosure proceedings and expects that Northern's easement will ultimately be adjudicated inferior to Barney's mortgage and divested from the property. (*Id.* ¶¶ 12–13.) As of the hearing on this motion, though, there had been no adjudication of priority and no sheriff's sale, following which there will be a one-year redemption period before Barney can take control of the property and the easement will be extinguished. (*Id.* ¶ 13.) That process will likely take approximately one-and-a-half years to play out, assuming Barney is the successful bidder and no party exercises their redemption rights. (*Id.* ¶¶ 13, 15.) Until then, Le remains the owner of the property and Northern's easement remains in force. (*See id.*)

Northern believes it will have to cease downstream service if it is not able to reestablish the validity of its easement before the property changes hands. (Kruger Decl.

¶ 19.)  Barney offered to sell the mortgage to Northern for the outstanding balance, but its offer was not accepted, and negotiations have stalled.  (Blanchard Aff. ¶ 11.)

Northern brought this eminent domain action pursuant to 15 U.S.C. § 717f(h). (Kruger Decl. ¶ 17.)  It filed a motion for partial summary judgment allowing immediate use and possession of the property for the maintenance of the pipeline and associated facilities, with just compensation to be resolved in later proceedings.  (*See* Pl.'s Mot. Partial Summ. J., Nov. 10, 2023, Docket No. 35; Pl.'s Mem. Supp. Mot. Partial Summ. J. at 8–9, Nov. 10, 2023, Docket No. 37.)  In its opposition to Northern's motion, Barney cross-moves the Court to stay or dismiss this action because Northern lacks standing.  (*See* Def.'s Mem. Opp'n Pl.'s Mot. Partial Summ. J. at 10, Dec. 1, 2023, Docket No. 44.)

## DISCUSSION

### I.   STANDARD OF REVIEW

The Constitution limits federal-court jurisdiction to cases or controversies.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (citing U.S. Const. art. III, § 2).  Therefore, Northern must demonstrate standing to sue by showing it has suffered an injury in fact.  *Id.* at 338. To establish injury in fact, Northern must show its injury is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  While courts "must afford due respect to Congress's decision" to create statutory causes of action, plaintiffs must still allege concrete injuries in fact to invoke Article III jurisdiction.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425–26 (2021).

The Supreme Court has recognized that future injury can establish Article III standing, but there must be a showing that the future injury is "certainly impending," or that there is "a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). Speculative, conjectural, or hypothetical harms do not suffice. *Lujan*, 504 U.S. at 560–61. Thus, "although imminence is concededly a somewhat elastic concept," Article III does not allow the Court to adjudicate "allegations of possible future injury." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

Ripeness doctrine is the flipside of the same coin. "[D]rawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," ripeness limitations are "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003) (internal quotations omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Parrish v. Dayton*, 761 F.3d 873, 875–76 (8th Cir. 2014) (internal quotations omitted). In evaluating ripeness, courts look to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 875 (internal quotations omitted).

II.   **ANALYSIS**

There are too many possible intervening events right now, approximately a year and a half before the foreclosure process will conclude, for Northern's injury to be more

than a possibility. Le could pay his arrears before the sheriff's sale. A third party could submit the winning bid at the sheriff's sale, in which case this action against Barney would afford Northern no relief. Northern itself could bid at the sheriff's sale and grant itself an easement before reselling the property. And Le or Northern could exercise their redemption rights for a full year following the sheriff's sale. Any one of these events over the following eighteen months would maintain Northern's right-of-way without the Court's intervention. Thus, Northern's risk of future harm, far from being "certainly impending," remains speculative and conjectural at this juncture. *See Driehaus*, 573 U.S. at 158; *Lujan*, 504 U.S. at 560–61; *see also Clapper*, 568 U.S. at 410–14 (no standing based on "speculative chain of possibilities").

Northern argues the Court's standing analysis would undermine the NGA's statutory scheme. But conferral of a statutory right of action does not diminish constitutional standing requirements. *See, e.g.*, *TransUnion*, 594 U.S. at 425–26; *Spokeo*, 578 U.S. at 341. Even if a lack of standing here would undermine the statutory scheme, that impediment does not diminish Article III's injury-in-fact requirement. In any event, the Court doubts Northern's parade of horribles would ensue. This is an exceedingly odd case—neither the Court nor the parties have found one comparable—in which the NGA certificate holder attempts to exercise eminent domain over a right-of-way it presently possesses. Even the title of Northern's motion, for immediate use and possession, illustrates the peculiarity. Northern moves for immediate use and possession even while

it uses and possesses the property. The Court speaks solely to the facts of this distinctive case, which need not undermine standing in an ordinary NGA action.

Of course, a case that is not presently ripe for review may become so in the future. Barney suggests Northern will have to wait until the redemption period ends and Barney takes ownership of the property to bring a § 717f(h) action. That would likely be a bridge too far. Although a party must wait until injury is more than a possibility to have standing, they need not wait until after the harm has occurred. *Cf. Driehaus*, 573 U.S. at 158–59. Likewise, the ripeness factors will change as the facts evolve. In particular, the "hardship to [Northern] of withholding court consideration" will increase as the property comes closer to changing hands and Northern's risk of losing access to its facilities increases. *Parrish*, 761 F.3d at 875. Accordingly, the Court will stay, rather than dismiss, this action. Should events transpire that put Northern at a greater, more imminent risk of losing its easement, it may move the Court to lift its stay.

## CONCLUSION

Because it is neither imminent nor certain that Northern will lose its easement, the Court will deny its motion for immediate use and possession and stay this action.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Partial Summary Judgment and Immediate Use and Possession [Docket No. 35] is **DENIED**, and

2. This action is **STAYED** until further order of this Court.

DATED: May 28, 2024
at Minneapolis, Minnesota.

                                              JOHN R. TUNHEIM
                                              United States District Judge